MIRANDA KANE (CA Bar No. 150630)
**CONRAD | METLITZKY | KANE LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 343-7100
Facsimile: (415) 343-7101
Email: mkane@conmetkane.com

*Attorneys for Defendant Noah Roskin-Frazee*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NOAH ROSKIN-FRAZEE,<br><br>Defendant. | CASE NO. 25-CR-0053-WHO<br><br>**DEFENDANT NOAH ROSKIN-FRAZEE'S SENTENCING MEMORANDUM** |

## I. INTRODUCTION

Barely eighteen, Noah Roskin-Frazee engaged in decidedly adult conduct with profound consequences. That he began his brief dalliance as an unlawful hacker with the intent of exposing someone who he suspected of preying upon young women on the internet is of no moment, nor is the fact that his instincts were correct. At some point, Mr. Roskin-Frazee abandoned any altruistic motive and chose to take advantage of the backdoor access - discovered by someone else - into the customer service system created for Company-1, by Company-2. The access allowed him to access Company-1 employees' accounts to order Company-1 products for himself.

Mr. Roskin-Frazee is acutely aware of how lucky he is to have been given the opportunity to participate in the Leading Emerging Adults to Develop Success (LEADS) program and to demonstrate to the Court and the government that his misguided conduct was truly aberrant. Almost eight years after the offense, Mr. Roskin-Frazee has done just that. Long before he learned about the criminal investigation that resulted in the instant charges, Mr. Roskin-Frazee abandoned the Discord gaming community and focused on white hat hacking, assisting companies in identifying security vulnerabilities on their platforms. In the three years that he has been under pre-trial supervision, Mr. Roskin-Frazee has continued to channel his computer skills in a positive direction, culminating in his current cybersecurity role at Uber where he has received accolades and an early promotion in recognition of his efforts.

Equally important, Mr. Roskin-Frazee has taken full advantage of the resources provided to him through the LEADS program to engage in meaningful reflection about what caused him to offend. He has successfully expanded his social connections, including improving his work-life balance, moving into an apartment, participating in activities with peers, and adopting a kitten. Throughout this process, Mr. Roskin-Frazee has also grappled with and sincerely accepted responsibility for the harm that he caused. His letters to the victim companies reveal a keen understanding of what their employees likely experienced during the investigation of the computer intrusion. Mr. Roskin-Frazee's commitment to satisfying his restitution obligation is further evidence of his acceptance of responsibility. The Court has had a front row seat to Mr. Roskin-Frazee's impressive transformation, maturation, and resilience. The adult who stands before you today has earned the dismissal of the felony charges and against him and the recommended probationary sentence on the remaining misdemeanor. We urge the Court to adopt that

recommendation, minus any computer related restrictions.

## II. PLEA AGREEMENT AND PRE-SENTENCE REPORT

### A. GUIDELINES CALCULATIONS

Mr. Roskin-Frazee is being sentenced on a single misdemeanor count of Obtaining Information from a Protected Computer in violation of 18 U.S.C. § 1030(a)(2)(C). The parties' Plea Agreement did not include an analysis regarding the Guidelines calculations for this offense. However, Mr. Roskin-Frazee agrees with the calculations in the Presentence Investigation Report ("PSR"):

| | |
|---|---|
| **Base Offense Level (U.S.S.G. § 2B1.1(a)(1)):** | **7** |
| Amount of loss over $3,500,000 and under $9,500,000 (U.S.S.G. § 2B1.1(b)(1)(J)): | + 18[1] |
| **Adjusted Offense Level (Subtotal):** | **25** |
| Zero-point offender (U.S.S.G. § 4C1.1(a)): | - 2 |
| Acceptance of responsibility (U.S.S.G. § 3E1.1(a)): | - 2 |
| Acceptance of responsibility (U.S.S.G. § 3E1.1(b)): | - 1 |
| **Total Offense Level:** | **20** |

PSR ¶¶ 19-28. The indicated sentencing range for an Adjusted Offense Level 20 and a Criminal History Category I is 33-41 months, which exceeds the statutory twelve month maximum for Mr. Roskin-Frazee's misdemeanor offense. He agrees with Probation's below Guidelines sentencing recommendation of a three-year term of probation, $25 special assessment, and restitution in the amount of $3,945.096.32. *Id.* ¶¶ 49, 61. For the reasons described below, he does not agree with the recommended probation conditions related to his computer use. He also requests that the Court waive the calculation of interest on the restitution amount.

[1] Under the inflationary amendments to the Guidelines loss table which go into effect November 1, 2026 - just weeks following Mr. Roskin-Frazee's sentencing - a loss greater than $2,000,000 and less than $5,000,000 would result in a 16-point enhancement, not 18 points. *See* Sentencing Guidelines for United States Courts, 91 Fed. Reg. 24088, 24091 (May 4, 2026) (effective Nov. 1, 2026). Mr. Roskin-Frazee's adjusted offense level would be 18 and his Guidelines range, 27-33 months.

**B. Unresolved PSR Objections, Including Opposition to Computer Restrictions**

The PSR contains several factual inaccuracies to which Mr. Roskin-Frazee previously objected:

- Page 2

  Release status: Mr. Roskin-Frazee was arrested and released the same day, on January 11, 2024. December 12, 2023 is the date the indictment in 23-CR-0471-WHO was returned.

  Education: Mr. Roskin-Frazee has completed more than "some college." He received a BA from Pomona College in May 2025.

- Paragraph 4: Mr. Roskin-Frazee is only being sentenced on 25-CR-0053-WHO, not 23-CR-0471-WHO. Pursuant to the Plea Agreement, Mr. Roskin-Frazee may withdraw his guilty plea to 23-CR-0471-WHO based on his successful completion of LEADS.

- Paragraph 5: The recitation of the Guidelines calculations related to 23-CR-0471-WHO should be stricken as Mr. Roskin-Frazee is only being sentenced in 25-CR-0053-WHO.

- Paragraph 6: Mr. Roskin-Frazee has provided Probation with proof of completion of 300 community service hours.

- Paragraph 42: Mr. Roskin-Frazee has provided Probation with verified copies of his active prescriptions.

- Paragraph 43: Mr. Roskin-Frazee continues to meet with Dr. Blum weekly.

- Paragraph 45: Mr. Roskin-Frazee provided Probation with a copy of his college diploma.

- Paragraph 53: The statutory maximum for supervised release for a Class A misdemeanor is 12 months. The applicable statute is 18 U.S.C. § 3583(b)(3). The Sentencing Recommendation table should also be amended to reflect the correct maximum.

- Paragraph 76-80: Computer-related conditions

Mr. Roskin-Frazee objects to the proposed Special Conditions intended to restrict and/or give Probation authority over his computer use, including Probation's ability to install monitoring software, oversee his internet access, and limit the use of encryption. Read literally, preventing the use of "any data encryption technique or program" *Id.* ¶ 80, would effectively mean that Mr. Roskin-Frazee could not use an iPhone or MacBook computer, as current Apple products have encryption enabled that cannot be turned off at the hardware level. Even a less conservative interpretation of the proposed conditions would prevent Mr. Roskin-Frazee from maintaining his current cybersecurity position and would likely preclude him from alternate employment in this field.

Probation's sole justification for these conditions is the nature of the offense conduct: "defendant fraudulently accessed two companies' databases." *Id.* ¶¶ 76-80. These conditions, which the government has previously acknowledged are "akin to that typically used in child exploitation cases" should not be presumptive. *See* Gov't Sentencing Memo. at 10, *United States v. Latteri*, No. 23-CR-0471-WHO (N.D. Cal. Apr. 24, 2025), Dkt. No. 99.[2] The record does not demonstrate a need for such dramatic measures here. Mr. Roskin-Frazee's unlawful access occurred over a limited weeks' long period during his senior year of high school. Even before the FBI executed a search warrant at his San Francisco residence over a year later in July 2020, Mr. Roskin-Frazee had already intentionally cut themself off from the bad actors he met through Discord. By the time he started college he had shifted his focus to white hat hacking both by participating in private companies' bug bounty programs and assisting law enforcement agencies that offered no monetary reward.

Tellingly, the government did not seek, nor did the Court *sua sponte* impose conditions limiting his computer use when Mr. Roskin-Frazee was placed on pre-trial release after his arrest in December 2023. Mr. Roskin-Frazee has had no pre-trial release violations, computer-related or otherwise. He continues to use his computer acumen responsibly both in his professional and personal lives, protecting users and drivers on the Uber platform and conducting bug bounty research and collaborating with a former crypto.com colleague about a start-up venture. The Court should not impose the suggested career ending computer use and monitoring conditions absent some particularized showing that Mr. Roskin-Frazee needs them. He does not. Mr. Roskin-Frazee has established a solid seven-plus year track record of "healthy computer usage habits." *See* PSR ¶¶ 76, 77, 78, and 80. There is no evidence that these restrictions are necessary to "promote community protection." *Id.* We submit that the opposite is true: the community is safer with Mr. Roskin-Frazee at the helm of these critical cybersecurity functions.

---

[2] This court imposed special computer-related supervised release conditions for Mr. Latteri, Mr. Roskin-Frazee's co-defendant in 23-CR-0471-WHO. *See* Amended Judgment at 5, *United States v. Latteri*, No. 23-CR-0471-WHO (N.D. Cal. Aug. 6, 2025), Dkt. No. 126. Notably, the record specifically established that Mr. Latteri used the internet to commit substantial crimes against hundreds of victims, including vulnerable younger women who he coerced into sending him nude photos, among other things. *See* Gov't Sentencing Memo at 4-7, *Latteri*, Dkt. No. 99. The factual circumstances are not comparable.

## III. MR. ROSKIN-FRAZEE'S EXTRAORDINARY POST-OFFENSE REHABILITATION EFFORTS JUSTIFY A DOWNWARD VARIANCE TO A PROBATIONARY SENTENCE

The PSR recognizes that Mr. Roskin-Frazee's rehabilitation efforts have been extraordinary. *Id*. at p. 22, (Sentencing Recommendation). Similarly, Pre-Trial Services has commended his "progress determination, and commitment to personal growth." LEADS Supervision Status Report (Oct. 5, 2026) (not for public disclosure). Indeed, through his participation in the LEADS program Mr. Roskin-Frazee has been relentless in his determination to better himself and gain understanding of the root causes of his criminal conduct. Mr. Roskin-Frazee has met this challenge head on, repeatedly stepping out of his comfort zone and overcoming challenging obstacles along the way.

As noted above, he had a solid head start. Mr. Roskin-Frazee did a complete about face on his own before he started college in the fall of 2019. He deliberately turned his back on the negative influences that contributed to his poor decision-making in this case. The impetus for this change was not impressing the government or the Court for a reduced sentence. He had no inkling of the pending investigation. Instead, Mr. Roskin-Frazee made a clear-headed decision about the sort of adult he wanted to be. His actions reflect precisely the type of reversal that post-offense rehabilitation is meant to recognize. What Mr. Roskin-Frazee has achieved in the seven years following these events merits a downward variance to probation.

### A. <u>Acceptance of Responsibility</u>

Mr. Roskin-Frazee's acceptance of responsibility is far weightier than the lip service required to earn a Guidelines reduction through a guilty plea. In addition to the self-examination he engaged in as part of the LEADS curriculum, last year he voluntarily sought out the opportunity to participate in this district's restorative justice program. This two-day intensive which brings victims and defendants together in the same "circle" through guided discussion with members of the United States Attorney's Office, the Federal Defender's Office, and the United States Pre-Trial Services and Probation Offices had a profound impact on Mr. Roskin-Frazee marking a dramatic perspective shift. He has stopped feeling sorry for himself and started to focus on gratitude for his own good fortune. He described the experience as "extremely intense but very rewarding and fulfilling."

Where he once emotionally distanced himself from the victim companies, Mr. Roskin-Frazee now appreciates the human toll of his actions and is deeply remorseful for the harm he caused the victim companies' employees, in particular. Mr. Roskin-Frazee's current cybersecurity position has opened his eyes to what their experience must have been like in the immediate aftermath of the security breach. He feels true empathy for the Company-2 employees who were wrongly accused. As he shared with Probation: "I feel extremely horrible for the cascading impact I caused. This affected not just Company-1 and Company-2, but the employees whose accounts I accessed, whom [sic] were interviewed, suspended without pay, and scared for their job due to nothing that they did nor had control over." PSR ¶ 17. The letters that Mr. Roskin-Frazee wrote to the victims as part of his LEADS work likewise evidence his true regret for the harm he caused.

Mr. Roskin-Frazee is also highly motivated to satisfy his restitution obligation in this matter. Mr. Roskin-Frazee is well-compensated at Uber, however he purposely lives relatively frugally. He depleted his personal savings which primarily consisted of lawfully earned bug bounty rewards, in order to meet the initial $1,000,000 tranche of restitution required under the Plea Agreement. He has continued to add to the account without prompting, almost doubling it to date. For instance, last September Mr. Roskin-Frazee "found" a Crypto.com DeFi wallet address worth approximately $500,000 that he had lost track of. The DeFi earn address was not recognized by the tin.network nor Koinly.io software that Mr. Roskin-Frazee used to consolidate his crypto holding balance across multiple block chains. Mr. Roskin-Frazee incidentally realized that there was a significant balance when he opened the DeFi earn app while performing some routine housekeeping on his phone. Upon discovery, Mr. Roskin-Frazee converted the crypto holdings to dollars, deposited the proceeds into his JP Morgan account, and transferred the whole amount to the Clerk of the Court. Similarly, Mr. Roskin-Frazee receives restricted stock units ("RSUs") as part of his equity incentive plan as an Uber employee. He immediately transfers those earnings towards his restitution obligation when they vest each quarter. Last, following a recent accident, Mr. Roskin-Frazee opted to lease a less expensive car so that he could apply the insurance proceeds towards restitution. His

commitment to repaying Company 1 and 2 for the investigative costs associated with his conduct is yet another aspect of his genuine acceptance of responsibility.[3]

B. Community Service

Mr. Roskin-Frazee's Plea Agreement required him to perform 300 hours of community service. As with other aspects of his LEADS Individualized Success Plan, he was determined to find a form of service that had personal meaning rather than simply engage in a check the box exercise. Initially, Mr. Roskin-Frazee worked at the SF-Marin Foodbank. When a high school friend took their own life in December 2025, he decided to become a Crisis Text Line Volunteer for Suicide Prevention SF. Mr. Roskin-Frazee approached this emotionally draining work with the same commitment and drive he has demonstrated in other aspects of his life. In March 2025, Mr. Roskin-Frazee was recognized as an outstanding counselor for "demonstrating excellence on the platform." He was truly gratified by the unexpected accolade, and he continues to provide crisis text line counseling even though he has met his community service obligation.

C. Work-Life Balance and Pro-Social Activities

Mr. Roskin-Frazee designed his individualized success plan to address his need for a better pro-social peer network which was identified as a critical criminogenic factor during his LSCMI screening. He has made significant strides in this area. To increase the opportunities for peer interaction and improve his mental health generally, Mr. Roskin-Frazee resigned from his role at crypto.com in the hopes of finding non-remote employment where he could work more regular hours. Finding a position in cybersecurity proved daunting. Mr. Roskin-Frazee deliberately disclosed his pending criminal case during the vetting process with potential employers. Despite his strong credentials, he repeatedly suffered discouraging setbacks during the background check stage at many companies. In June 2025 he was both excited and relieved to be hired as a Security Response Engineer at Natera only to be fired after his first day because he was not in the company's "risk tolerance." That experience was particularly deflating, but Mr. Roskin-Frazee persisted in his efforts to find work in his chosen field. In September 2025 he started as a Senior Security Incident Commander where he has thrived in his first year: he works in the office most days, has

[3] The Court has the discretion to waive the requirement that Mr. Roskin-Frazee pay interest on his restitution obligation. See 18 U.S.C. § 3612(f)(3). We respectfully request that the Court do so here.

made critical social connections, and been recognized for his contributions through off cycle bonuses and a promotion. Just weeks before his Uber start date Mr. Roskin-Frazee reflected: "It's just hitting me now that I did it and actually overcame not only the astounding amount of barriers but somehow made two big companies want me enough to essentially beg (uber had me meet with a director yesterday in the office). And I'm only 24. Wow." His conclusion: "Young hackers NEED to know there are better outlets!!!" With that goal in mind, Mr. Roskin-Frazee created a presentation aimed at teens whose loneliness and social anxiety might lure them into the false sense of belonging offered by Discord and other on-line groups. He is eager to find an audience with whom he can share his own cautionary tale.

Mr. Roskin-Frazee has made huge progress expanding his pro social community as well. He lives in an apartment with two friends and has recently adopted a third roommate, a kitten named Coconut. He regularly attends board game and trivia nights and has even hosted. These seemingly commonplace milestones are indicative of a new confidence and emotional maturity. Mr. Roskin-Frazee has successfully honed the tools he needs to ensure that he stays on a positive, law-abiding path.

## II. CONCLUSION

For the foregoing reasons, Mr. Roskin-Frazee respectfully requests that this Court impose a sentence of three-years' probation, without the computer-related restrictions recommended in the PSR; a $25 special assessment fee; and $3,945,096.32 interest-free restitution.

DATED: October 8, 2026

*<u>/s/ Miranda Kane</u>*
MIRANDA KANE

*Attorney for Defendant Noah Roskin-Frazee*