CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

NIKHIL BHAGAT (CABN 279892)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-6982
nikhil.bhagat@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NOAH ROSKIN-FRAZEE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CR 25-00053 WHO<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM**<br><br>Sentencing Date: October 15, 2026<br>Sentencing Time: 1:30 p.m.<br><br>Before: The Honorable William H. Orrick |

Pursuant to Local Criminal Rule 32-5(b), the United States of America respectfully submits this sentencing memorandum to aid the Court in its determination of a sentence that is sufficient but not greater than necessary to promote the purposes set forth in the sentencing statute.

The defendant has separately pleaded guilty to ten felony offenses as a result of his conduct. PSR ¶ 1. In this case, he pleaded guilty to a Class A misdemeanor – Obtaining Information from a Protected Computer in violation of Title 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(A). But his actions were far from misdemeanant. Roskin-Frazee's criminal conduct—hacking into a multinational tech company in an intrusion that lasted months and compromised hundreds of accounts, which allowed him and his co-defendant access into a much larger company—was significant, and

caused the companies to suffer millions of dollars in damage. But for the reasons below, including his young age at the time of the offense, his post-offense rehabilitation, and his efforts to compensate the victims for their losses—the United States recommends a sentence of three years' probation.

## I. The Offense Was Serious, Caused Millions of Dollars in Damage, and Took Place Over a Sustained Period (*18 U.S.C. § 3553(a)(1)--Nature and Circumstances of the Offense)* [1]

### A. Phase One (December 21, 2018 through February 16, 2019)

On the night of December 21, 2018, Roskin-Frazee and his co-defendant in the felony case, Keith Latteri, unlawfully gained access to the credentials of a high-level employee of COMPANY B. That employee had access to reset the passwords of approximately 3,000 advisor accounts. COMPANY B provides customer experience solutions—as a contractor to other companies, including COMPANY A. COMPANY A, in turn, is a leading U.S.-based multinational provider of computer hardware, tablets, mobile devices, and software.

Using that access, the attackers reset the password of another COMPANY B employee and gained access to COMPANY B's network through that individual. Ultimately, the attackers used this COMPANY B employee's access to get into a COMPANY A customer relations tool. That tool allowed the user to access substantial amounts of COMPANY A information, including customer information lookup, repair instructions, customer call logs, chat features, search by device serial numbers, and importantly, the ability to enter orders for replacement hardware without cost.

COMPANY B initially detected suspicious activity on its network on December 24, 2018 and eventually engaged a third-party incident response firm to help. It was not until January 18, 2019, however, that COMPANY B was able to successfully stop the attackers from using this line of attack.

---

[1] Unless otherwise stated, the facts stated in this section are drawn from the PSR and Paragraph 2 of the defendant's plea agreement.

**B. Phase Two (January 16, 2019 through February 16, 2019)**

But unbeknownst to COMPANY B, Roskin-Frazee and his co-defendant already had access to another way into COMPANY B's network: the JAMF platform. By deploying a series of scripts on more than 6,000 COMPANY B units, they were able to gain access to an even more powerful COMPANY A tool that not only gave them the ability to send out *replacement* hardware and software without charge, but actually gave them access to a COMPANY A database that allowed them to view and edit orders for COMPANY A hardware and software and electronic gift cards. As described below, Roskin-Frazee used this access to order more than $100,000 worth of hardware, and an attacker using the same access got away with $2.7 million in COMPANY A gift cards.

The intrusion finally stopped on February 16, 2019, when COMPANY B, working with its incident response team, was able to blacklist the attackers' IP address and take other action to eliminate their access to the system. In total, Roskin-Frazee and his co-defendant were in the COMPANY B network for six weeks. In total, from the intrusion itself, COMPANY A and COMPANY B suffered millions of dollars in losses.

During the intrusion, Roskin-Frazee used that access to fraudulently obtain at least $117,260.66 in COMPANY A merchandise and service contracts. Additionally, during the intrusion, this access was used to fraudulently obtain and redeem $2,727,075.37 in COMPANY A gift cards.

**II. The Defendant's History and Characteristics (18 U.S.C. § 3553(a)(2))**

In stark contrast to most other defendants who appear before this Court, and in particular to his co-defendant in case 23-CR-471, Noah Roskin-Frazee has led a privileged life. He does not struggle with alcohol or drugs. He attended an elite private high school where tuition runs in excess of $65,000 annually. PSR ¶ 45. Thereafter, he graduated from one of the most elite liberal arts colleges in the country. *Id.* He has been consistently employed since college, and at 25 years old, his annual salary (even excluding annual bonuses) exceeds that of a Member of Congress. *See id.* ¶ 47.

But at the time of the offense, the defendant was just 18 years old, and he has no prior criminal convictions or prior contact with law enforcement; those factors militate in favor of a non-custodial sentence.

## III. The Sentencing Guidelines (*18 U.S.C. § 3553(a)(4)*)

The Probation Officer has correctly calculated the Guidelines as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G § 2B1.1 | 7 |
| Loss Amount, $3.5 mm - $9.5 mm, U.S.S.G. § 2B1.1(b)(1)(J) | +18 |
| Zero Point Offender, U.S.S.G. § 4C1.1 | -2 |
| Acceptance of Responsibility, U.S.S.G. §§ 3E1.1 | -3 |
| Total Adjusted Offense Level | 20 |

As the Probation Officer notes, an offense level of 20 and a criminal history category I would ordinarily yield a recommended sentencing range of 33 to 41 months in custody, but because the maximum statutory sentence for the defendant's offense of conviction is 12 months, that is the Guideline range. U.S.S.G. § 5G1.1.

## IV. General and Specific Deterrence (*18 U.S.C. §* 3553(a)(2)(B))

The types of crimes the defendant committed are particularly difficult to detect and cause victims, many of whom are in this District, significant losses. General deterrence should be a significant consideration in a case of this kind.

On the other hand, specific deterrence is a less important sentencing factor here. The defendant was charged in late 2023 and made his initial appearance in early 2024. Since then, he has complied with all the terms of his pretrial release and complied with the rigorous conditions of his LEADS program and the plea agreement, which include hundreds of hours of community service and the development of a training program for youth. He has also made substantial progress towards compensating his victims, paying well over $1,800,000 towards his restitution obligations, much more than the plea agreement requires. Given this record, specific deterrence is a less important consideration in this case. A three year probation term would adequately balance the statutory sentencing factors of general and specific deterrence.

**V. The Need to Protect the Public Requires the Addition of Special Conditions Allowing Probation to Monitor the Defendant's Internet Activity, But Those Conditions Can Be Modified to Reasonably Accommodate the Defendant's Work (*18 U.S.C. § 3553(2)(C))***

The Probation Office has recommended the imposition of certain computer-monitoring terms that are narrowly tailored to the offense conduct in this case. The defendant objects, principally on the basis that the conditions will interfere with his employment. The law requires that conditions of probation be "reasonably related" to Section 3553's sentencing factors, which include public protection. 18 U.S.C. § 3563(b).

Here, the probation officer has recommended five monitoring-related conditions:

1. You must notify and obtain the prior approval of the probation officer before possessing or using a computer or computer-related device. "Computer or computer-related device" means any electronic device capable of creating, accessing, storing or transmitting images or video. Once you have gained approval to use a device, that approval is ongoing unless withdrawn by the probation office.

2. If approved to possess a computer or computer-related device, the Probation Office may install monitoring software and/or hardware. You must abide by the rules of the monitoring program in place at the time of installation.

3. You must not access the internet or any "on-line computer service" on any unmonitored device at any location (including employment) without the prior approval of the probation officer. "On-line services" include any internet service provider, or any other public or private computer network. If the probation officer determines that it is necessary to notify your employer of restrictions to your computer use, the probation officer first must obtain approval from the Court.

4. You must allow the probation officer to conduct examinations of your computer equipment only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation. The search may include retrieval and/or copying of data from your devices to ensure compliance with all conditions and/or removal of any such equipment for the purpose of conducting more thorough inspection.

5. You must not possess or use any data encryption technique or program unless it is necessary for your employment or approved by the probation officer.

All of these conditions are reasonably related to the sentencing factors in this case, where the defendant's crime was gaining unauthorized access to the systems of major international technology firms and exploiting that access to obtain goods and services. But they can be modified to remove redundance and accommodate the defendant's chosen profession but still permit probation to maintain some ability to monitor the defendant's activity. The government recommends the Court impose the monitoring conditions as modified below:

1. You must notify ~~and obtain the prior approval of~~ the probation officer before possessing or using a computer or computer-related device. "Computer or computer-related device" means any electronic device capable of creating, accessing, storing or transmitting images or video. **This condition does not apply to any Computer or computer-related device owned by your employer.** ~~Once you have gained approval to use a device, that approval is ongoing unless withdrawn by the probation office.~~

2. ~~If approved to possess a~~ **With respect to any** computer or computer-related device **you use**, the Probation Office may install monitoring software and/or hardware. You must abide by the rules of the monitoring program in place at the time of installation. **This monitoring condition does not apply to any Computer or computer-related device owned by your employer.**

3. ~~You must not access the internet or any "on-line computer service" on any unmonitored device at any location (including employment) without the prior approval of the probation officer. "On-line services" include any internet service provider, or any other public or private computer network. If the probation officer determines that it is necessary to notify your employer of restrictions to your computer use, the probation officer first must obtain approval from the Court.~~

4. ~~You must allow the probation officer to conduct examinations of your computer equipment only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation. The search may include retrieval and/or copying of data from your devices to ensure compliance with all conditions and/or removal of any such equipment for the purpose of conducting more thorough inspection.~~

5. You must not possess or use any data encryption technique or program unless it is necessary for your employment or approved by the probation officer.

Conditions 1 and 2, as modified, reasonably accommodate the defendant's need to use computers for work and have been rewritten to require only notification, not approval. And companies like Mr. Roskin-Frazee's employer already use monitoring systems for their employees' devices; those systems are likely to be substantially more sophisticated than any software the probation office would employ.

The government does not recommend the imposition of Conditions 3 and 4. Condition 3 appears to be redundant, because any computer or computer-related device the defendant could plausibly use to commit a computer intrusion is covered by the restriction in Condition 1. Condition 4 also appears redundant, because the parties have elsewhere agreed to, and the Probation Officer has recommended, a suspicionless search clause. Condition 5 reasonably accommodates the defendant's work, is not overly burdensome, and is reasonably related to the underlying offense. It should be imposed as recommended by the Probation Office.

## VI. Restitution

Pursuant to 18 U.S.C. § 3663A, restitution must be ordered as part of any judgment in this case. Mr. Roskin-Frazee has agreed that he owes at least $3,827,835.66 to COMPANY B, which represents the total of COMPANY B's incident response costs, and the government requests that the Court order him to pay that amount as part of the judgment. Mr. Roskin-Frazee should also be ordered to pay $117,260.66 to COMPANY A. The Court's judgment should reflect the entire amount due; any payments Mr. Roskin-Frazee has made prior to judgment will be credited against that judgment.

## VII. Conclusion

For the foregoing reasons, the Court should impose a sentence of three years probation, subject to the standard conditions of probation as well as the special conditions recommended by the Probation officer except as modified above, as well as restitution to COMPANY A and COMPANY B.

Dated: October 8, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

By: _________/s/________________
NIKHIL BHAGAT
Assistant United States Attorney